

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

RALPH JACQUEZ,

                  Plaintiff,

          v.

MICHAEL J. ASTRUE,
Commissioner of the Social
Security Administration,

                  Defendant.

Case  No. CV08-06379 AJW

MEMORANDUM OF DECISION

      Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits and supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

### Administrative Proceedings

      The parties are familiar with the procedural facts, which are set forth in the joint stipulation. [See JS 2-3]. In a written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of diabetes mellitus and hypertension, both well-controlled, and that those impairments did not preclude him from performing his past relevant work as a truck driver.[See

1    JS 2-3; Administrative Record ("AR") 15-21].

2

3                          **Standard of Review**

4          The Commissioner's denial of benefits should be disturbed only if it is not supported by

5    substantial evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d

6    1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).

7    "Substantial evidence" means "more than a mere scintilla, but less than a preponderance."

8    Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005).   "It is such relevant evidence as a

9    reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400

10   F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to

11   review the record as a whole and to consider evidence detracting from the decision as well as

12   evidence supporting the decision.  Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir.

13   2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is

14   susceptible to more than one rational interpretation, one of which supports the ALJ's decision,

15   the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of

16   Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

17                              **Discussion**

18         **Severity determination**

19         Plaintiff contends that the ALJ erred in finding that he did not have a severe mental

20   impairment.  Specifically, plaintiff argues that the ALJ improperly rejected the opinion of

21   plaintiff's treating psychiatrist and failed adequately to develop the record following the

22   administrative hearing, during which plaintiff appeared without a representative. [See JS 4-18].

23         At step two of the five-step sequential evaluation procedure, the Commissioner must

24   determine whether the claimant has a severe, medically determinable impairment or

25   combination of impairments. See Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996)

26   (citing Bowen v. Yuckert, 482 U.S. 137, 140-141 (1987)). A medically determinable mental

27   impairment is one that results "from anatomical, physiological, or psychological abnormalities which can

28   be shown by medically acceptable clinical and laboratory diagnostic techniques," and it "must be established

                                        2

by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."   20 C.F.R. §§ 404.1508, 416.908; see 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). A medically determinable impairment or combination of impairments may be found "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2006) (quoting Smolen, 80 F.3d at 1290).

To assess severity, the ALJ must determine whether a claimant's impairment or combination of impairments significantly limits his or her physical or mental ability to do "basic work activities." 20 C.F.R. §§ 404.1521 (a), 416.921(a); see Webb, 433 F.3d at 686.  Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b).  The ALJ is required to consider the claimant's subjective symptoms in making a severity determination, provided that the claimant "first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s)."  SSR 96-3p, 1996 WL 374181, at *2.

Plaintiff alleged that he was disabled by depression, anxiety, and post-traumatic stress disorder stemming from a 1983 motor vehicle accident.  Plaintiff was driving an 18-wheel hay truck that slammed into a car fleeing Border Patrol agents, killing eleven people. Plaintiff was found not at fault in causing the collision. He continued to work as a truck driver until 2001 or 2002.  He testified, however, that he experienced nightmares and flashbacks of the accident, and that he sometimes had to pull off the road due to anxiety that he might hit someone again. Eventually, plaintiff said, his anxiety became too much for him, and he quit driving a truck.  [AR 44, 51-52, 60, 67, 341, 338, 344, 358-372].

Plaintiff testified that he was receiving mental health treatment from Dr. Rashidi, and that he took

1    medication that helped him feel better. [AR 361, 372].  The record includes two "Short Form Evaluation

2    for Mental Disorders" signed by Dr. Nasrollah Rashidi in June 2005 and July 2004. [AR 192-196].   Dr.

3    Rashidi said that plaintiff had seen him weekly to monthly since October 2003. [AR 192, 194]. In the July

4    2004 report, Dr. Nashidi noted the following mental status examination findings. Plaintiff was well-

5    groomed, cooperative, and fully oriented. He exhibited a tremor, slow speech, irritability, slightly distracted

6    concentration, mildly impaired memory, anxious and depressed mood, blunted affect, circumstantial

7    associations, obsessive worries about his job and life, and mildly impaired judgment. He exhibited no

8    hallucinations or delusions. Intelligence was average. [AR 194-195]. Dr. Nashidi's diagnoses were bipolar

9    disorder and post-traumatic stress disorder ("PTSD"). [AR 194]. Dr. Nashidi commented that plaintiff had

10   "suffer[ed] from panic disorder (PTSD) and depression" since his 1983 accident. [AR 194].  In a section

11   labeled "Progress in Treatment and Prognosis," Dr. Nashidi said that plaintiff was less depressed, less

12   anxious, more hopeful, and more optimistic about the future. [AR 196]. Asked to rate plaintiff's current

13   work-related skills, Dr. Nashidi indicated that plaintiff had (1)"fair"[1] ability to maintain concentration,

14   attention, and persistence; understand, remember, and carry out complex instructions; complete a normal

15   workday and workweek without interruptions from psychologically-based symptoms; and respond

16   appropriately to changes in a work setting; and (2) "good"[2] ability to perform activities within a normal

17   schedule and maintain regular attendance; and understand, remember, and perform simple instructions. [AR

18   193].

19        On mental status examination in June 2005, Dr. Nashidi indicated that plaintiff exhibited a tremor,

20   pressured speech, irritability, poor impulse control, mildly impaired concentration and memory, anxious

21   mood, labile affect, and blocking of associations.  Plaintiff was well-groomed, fully oriented, and

22   cooperative. No delusions or preoccupations were noted. Judgment was intact. He had no hallucinations.

23   Intelligence was average.  Dr. Nashidi's diagnoses of bipolar disorder and PTSD were unchanged.  He

24

25        [1]    "Fair" was defined as "[t]he evidence supports the conclusion that the individual's
26   capacity to perform the activity is impaired, but the degree/extent of the impairment
     needs to be further described." [AR 196].

27        [2]    "Good" was defined as "[t]he effects of the mental disorder do not significantly
28   limit the individual from consistently and usefully performing the activity." [AR 196].

commented that plaintiff had mood swings, depression, anxiety, and "post traumatic disorder" due to his 1983 accident, still had panic attacks "off and on," isolated himself, and avoided socialization. [AR 192-193]. Regarding plaintiff's current work-related skills, Dr. Nashidi wrote that plaintiff had (1) a "fair-poor" ability to maintain concentration for two-hour periods; (2) a "fair" ability to interact with co-workers and supervisors; handle responsibilities common to a basic work environment; and understand, remember, and perform complex instructions; and (3) an "OK" ability to sustain an ordinary routine without special supervision and to understand, remember, and perform simple instructions. [AR 193]. The terms "poor," "fair," and "OK" were not defined in the report reflecting the June 2005 mental status examination. [AR 193]. Dr. Rashidi was not asked to identify plaintiff's medications on those forms, but plaintiff's disability reports indicate that Dr. Rashidi prescribed plaintiff a number of medications for depression. [See AR 56, 62, 64-65, 141].

Jason Yang, M.D., conducted a consultative psychiatric evaluation in November 2004. [AR 197-200]. Dr. Yang elicited a history and conducted a mental status examination, which was within normal limits. Plaintiff told Dr. Yang wrote that he started having anxious symptoms about a year earlier and had been prescribed Clonazepam. Plaintiff told Dr. Yang that Clonazepam "controls his anxiety."[AR 197]. Dr. Yang diagnosed anxiety disorder, not otherwise specified. Dr. Yang concluded that plaintiff could focus attention adequately, follow one and two part instructions, adequately remember and complete simple tasks, tolerate the stress inherent in a work environment, maintain regular attendances, work without supervision, and interact appropriately with supervisors, coworkers, and the public in the workplace. Dr. Yang gave plaintiff a "fair" psychiatric prognosis, adding that plaintiff "appears to be able to make simple social, occupational, and personal adjustments." [AR 199].

Relying on the opinions of Dr. Yang and the nonexamining state agency physicians, the ALJ found that plaintiff had a medically determinable anxiety order that caused no more than a minimal limitation in plaintiff's ability to perform basic work activities. The ALJ gave Dr. Rashidi's opinion little weight because "his treatment records do not support a conclusion that the claimant had more than mild limitations in his ability to function." [AR 20]. The ALJ cited Dr. Rashidi's July 2004 report stating that plaintiff was "only slightly distracted and his memory was only mildly impaired," and Dr. Rashidi's July 2005 report stating that plaintiff's "concentration and memory were both only mildly impaired." [AR 20].

The severity inquiry is "a de minimis screening device to dispose of groundless claims," and the absence of a severe impairment or combination of impairments must be "clearly established by medical evidence." Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290, and Social Security Ruling ("SSR") 85-28). If the ALJ "is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation should not end with the not severe evaluation step." Webb, 433 F.3d at 687 (quoting SSR 85-28). An overly stringent application of the severity requirement may violate the Social Security Act by denying benefits to claimants who meet the statutory definition of disability.  Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994).

The absence of a severe mental impairment was not "clearly established by medical evidence." First, Dr. Rashidi's findings and conclusions indicate that plaintiff had a mental impairment that more than minimally affected his ability to work. The ALJ said that Dr. Rashidi's 2004 and 2005 evaluations were inconsistent with his "treatment records," but the ALJ did not cite any "treatment records" to support that conclusion because there were none in the record.  Instead, the ALJ selectively focused on findings of mild concentration and memory impairments in Dr. Rashidi's reports while ignoring the remaining findings, diagnoses, and functional assessment reflected in those reports. See Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(stressing  the importance, at step two, of the requirement that the ALJ "consider the combined effect of all of the claimant's impairments on his ability to function," and holding that the ALJ erred in finding no severe mental impairment where he "selectively focused on aspects of [an examining physician's] report which tend to suggest non-disability"); Lester v. Chater, 81 F.3d 821, 832-833 (9th Cir. 1995) (stating that the Commissioner must give weight to the treating physician's clinical findings, interpretation of test results, and subjective judgments).  During the hearing, after plaintiff told him that he currently was receiving mental health treatment from Dr. Rashidi, the ALJ said that he had received one report from "Ventura County Behavior" and added,  "So I need to go and get additional updated records." [AR 372-373].  A post-hearing request was sent to Ventura County Behavioral Health, which returned the request without additional records because plaintiff had last been seen there in 1992. [AR 315-321].  Although plaintiff provided Dr. Rashidi's address and telephone number in his disability reports [e.g., AR 139], the record does not indicate that any post-hearing request for records was

sent to Dr. Rashidi.

Where, as here, the claimant was not represented by counsel during the administrative hearing, the ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992) (per curiam) (quoting Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978)). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb, 433 F.3d at 687 (citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001)). The ALJ did not discharge his burden to develop the record. Plaintiff was not represented during the hearing, and the ALJ indicated on the record both that he needed updated mental health treatment medical records and that he would at least attempt to get them. Having failed to do so, it was error for the ALJ to reject Dr. Rashidi's treating source opinion because it was inconsistent with his treatment records. [AR 20]. See Webb, 433 F.3d at 687 (holding that although the claimant "ultimately bears the burden of establishing his disability," the ALJ breached his "affirmative duty to supplement [the claimant's] medical record, to the extent it was incomplete, before rejecting [the claimant's] petition at so early a stage in the analysis").

The ALJ's reliance on Dr. Yang's consultative report is also problematic because Dr. Yang did not review any medical records, and nothing in that report indicates that Dr. Yang was aware of plaintiff's 1983 motor vehicle accident and its alleged effect on plaintiff's mental health. [AR 197-200]. Plaintiff repeatedly described that accident and its effects on him in his disability reports, so the omission of that issue from the consultative examiner's report cannot be considered immaterial.

Defendant argues that the ALJ properly relied on plaintiff's  testimony that he worked for many years after the accident.  A mental impairment need not be disabling to pass the "de minimis" threshold. Furthermore, plaintiff said in his testimony and disability reports that while he forced himself to go back to the only job he knew, he long suffered nightmares, flashbacks, and anxiety about having another accident that had a cumulative effect on his mental health and eventually caused him to stop working. [E.g., AR 60, 67].  That testimony is consistent with Dr. Rashidi's treating diagnoses of PTSD in 2004 and 2005, more than 20 years after plaintiff's 1983 accident. [See AR 192-196].

Because he found that plaintiff had a medically determinable anxiety disorder, the ALJ was required to consider "the intensity, persistence, and limiting effects of" plaintiff's subjective mental symptoms "along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe." SSR 96-3p, 1996 WL 374181, at *2. The ALJ erred in relying on plaintiff's work history without discussing, or give reasons for rejecting, plaintiff's subjective statements about the cumulative effect of his alleged anxiety and post-traumatic stress. See Webb, 433 F.3d at 688 (holding that the ALJ improperly rejected the claimant's subjective complaints where there was "no inconsistency between [the claimant's] complaints and his doctors' diagnoses sufficient to doom his claim as groundless under the de minimis standard of step two").

For all of these reasons, the ALJ's finding that plaintiff did not have a severe, medically determinable mental impairment, alone or in combination with his physical impairments, is not based on substantial evidence in the record and reflects application of an improper legal standard.

**Choice of remedy**

In general, the choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or for payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S. 1038 (2000). The Ninth Circuit has observed that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)). A district court, however,

> should credit evidence that was rejected during the administrative process and remand for
> an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for
> rejecting the evidence; (2) there are no outstanding issues that must be resolved before a
> determination of disability can be made; and (3) it is clear from the record that the ALJ
> would be required to find the claimant disabled were such evidence credited.

Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (citing Harman, 211 F.3d at 1178). The Harman test

1   "does not obscure the more general rule that the decision whether to remand for further proceedings turns

2   upon the likely utility of such proceedings." Harman, 211 F.3d at 1179; see Benecke, 379 F.3d at 593

3   (noting that a remand for further administrative proceedings is appropriate "if enhancement of the record

4   would be useful").

5        There are outstanding issues because the ALJ did not reach the remaining steps in the sequential

6   evaluation procedure.   Accordingly, the appropriate remedy is a remand for further administrative

7   proceedings and a new hearing decision.  See Webb, 433 F.3d at 688 (remanding for further administrative

8   proceedings where "the ALJ should have continued the sequential analysis beyond step two because there

9   was not substantial evidence to show that [the disability] claim was 'groundless'").

10  ///

11  ///

12  ///

13

14                          **Conclusion**

15        For the reasons stated above, the Commissioner's decision is **reversed,** and this case is

16  **remanded for further administrative proceedings** consistent with this memorandum of

17  decision.

18

19  DATED: November 12, 2009



20

21  _____

22  ANDREW J. WISTRICH
    United States Magistrate Judge

23

24

25

26

27

28